UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL GUNN,

             Plaintiff,

vs.                             Case No.   2:04-cv-229-FtM-99SPC

DANIEL SULLIVAN; OFFICER MILLARD;
LIEUTENANT PFALZGRAF,

             Defendants.
_____

**OPINION AND ORDER**

This matter comes before the Court upon Defendants' Motion for Summary Judgment filed on behalf of Defendants Sullivan, Millard and Pfalzgraf (Doc. #34) and Plaintiff's Response in Opposition to Defendants' Motion (Doc. #38).  This matter is now ripe for review.

**I.**

Plaintiff, subsequent to his release from prison, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. #1) alleging an Eighth Amendment violation stemming from a May 10, 2003 incident in which Plaintiff claims he was subjected to an alleged excessive and unnecessary use of chemical agents while he was incarcerated at Charlotte Correctional Institute.  Defendants, who are correctional officers employed by the Florida Department of Corrections, filed a Motion to Dismiss Plaintiff's Complaint.  On August 31, 2005, the Court granted Defendants' Motion to Dismiss only to the extent that the Complaint sought damages against the

Defendants in their official capacities. In all other respects, the Motion to Dismiss was denied (Doc. #29).

Defendants now move for summary judgment. In support of their Motion, Defendants attach the Affidavits of Daniel Reid Sullivan ("Sullivan Aff." Exhibit "A"), Dale Lonnie Pfalzgraf ("Pfalzgraf Aff." Exhibit "B"), Mark Pate ("Pate Aff." Exhibit "C") and Burle Wayne Taylor ("Taylor Aff." Exhibit "D"). Plaintiff opposes Defendants' Motion and submits in support of his Opposition the declarations, sworn to under penalty of perjury, of Plaintiff ("Plaintiff's Decl." Doc. #39), Jamal Glenn ("Glenn Decl." Doc. #40), and Kunta Porter ("Porter Decl." Doc. #41).

## II.

With respect to the standard for granting summary judgment, the Eleventh Circuit Court of Appeals has stated:

> [S]ummary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

In re Optical Techs., Inc., 246 F.3d 1332, 1334 (11th Cir. 2001). "A factual dispute alone is not sufficient to defeat a properly pled motion for summary judgment." Teblum v. Eckerd Corp. of Fla., Inc., Slip Copy, 2006 WL 288932 (M.D. Fla. 2006). "Only factual disputes that are material under the substantive law governing the

-2-

case will preclude entry of summary judgment." <u>Lofton v. Secretary of Dep't Of Children & Family Servs.</u>, 358 F.3d 803 (11th Cir. 2004). The moving party bears the burden of demonstrating to the Court that based upon the record no genuine issues of material fact exist that should be decided at trial. <u>Hickson Corp. V. Northern Crossarm Co., Inc.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004)(citing <u>Celotex</u>, 477 U.S. at 323). "When a moving party has discharged its burden, the non-moving party must 'then go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that ere is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590. 593-94 (11th Cir. 1995)(citing <u>Celotex</u>, 477 U.S. at 324).

"It is true that on a motion for summary judgment, all reasonable inferences must be made in favor of the non-moving party." <u>Cuesta v. School Bd. of Miami-Dade County</u>, 285 F.3d 962, 970 (11th Cir. 2002) (citation omitted). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" <u>Id.</u> (citations omitted). Additionally, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." <u>Burger King Corp. v. Weaver</u>, 169 F.3d 1310, 1321 (11th Cir.)(quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986)), <u>reh'g</u>

and suggestion for reh'g en banc denied, 182 F.3d 938 (11th Cir.), cert. dismissed, 528 U.S. 948 (1999). Where, however, there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003).

### III.

The Eighth Amendment, which prohibits "cruel and unusual punishment," provides the constitutional framework for analyzing Plaintiff's claim. Specifically, it is the unnecessary and wanton infliction of pain that constitutes cruel and unusual punishment. Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citations omitted). In applying the Eighth Amendment in the context of prison discipline, a distinction is made between "punishment after the fact and immediate coercive measures necessary to restore order and security." Ort v. White, 813 F.2d 318, 324-25 (11th Cir. 1987).

With regard to the use of chemical agents:

> It is generally recognized that "it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." Soto v. Dickey, 744 F.2d 1260, 1270 (7th Cir. 1984), cert. denied, 470 U.S. 1085, 105 S. Ct. 1846, 85 L. Ed. 2d 144 (1985). For this reason, we have closely scrutinized the use of tear gas or mace (a trade name for tear gas, Soto, 744 F.2d at 1261) in correctional facilities. See e.g., Bailey v. Turner, 736 F.2d 963 (4th Cir. 1984); Greear v. Loving, 538 F.2d 578 (4th Cir. 1976). This is because, even when properly used, such weapons "possess inherently dangerous characteristics capable

-4-

> of causing serious and perhaps irreparable injury to the victim." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984), cert. denied, 470 U.S. 1035, 105 S. Ct. 1413, 84 L. Ed. 2d 796 (1985). Accordingly, although it is not *per se* unconstitutional for guards to spray mace at prisoners confined in their cells, it is necessary to examine the "totality of the circumstances, including the provocation, the amount of gas used, and the purposes for which the gas is used [to] determine[e] the validity of the use of tear gas in the prison environment." Bailey, 736 F.2d at 969. See also Justice v. Dennis, 834 F.2d 380, 383 (4th Cir. 1987) (en banc), vacated on other grounds, 490 U.S. 1087, 109 S. Ct. 2461, 104 L. Ed. 2d 982 (1989).
>
> However, mace can be constitutionally used in small quantities to "prevent riots and escapes" or to control a "recalcitrant inmate." Landman v. Peyton, 370 F.2d 135, 138 & n. 2 (4th Cir. 1966), cert. denied, 388 U.S. 920, 87 S. Ct. 2142, 18 L. Ed. 2d 1367 (1967). See also Bailey, 736 F.2d at 968-69. A limited application of mace may be "much more humane and effective than a flesh to flesh confrontation with an inmate." Soto, 744 F.2d at 1262. Moreover, prompt washing of the maced area of the body will usually provide immediate relief from pain. Id.

Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996). Thus, it is "the imposition of pain totally without penological justification" that is proscribed by the Eighth Amendment. Evans v. Dugger, 908 F.2d 801, 803 (11th Cir. 1990) (citations omitted). See also Ort v. White, 813 F.2d 318; Rhodes v. Chapman, 452 U.S. 337, 346 (1981). Instances of "physical abuse directed at [a] prisoner **after** he terminate[s] his resistence to authority would constitute an actionable eighth amendment violation." (emphasis in original) Hope v. Pelzer, 536 U.S. 730, 731 (2002)(quoting Ort v.

White, 813 F.2d 318, 324). Significantly, the Eleventh Circuit found that:

> the use of force in retaliation for a provocative act occurring some time earlier is "more likely to be not an effort to restore order but instead either a motive for 'maliciously' striking the inmate 'for the purpose of causing harm' or else summary, informal, unofficial and unsanctioned corporal punishment."

Ort v. White, 813 F.2d 318, 324 (quoting Smith v. Dooley, 591 F.Supp. 1157 (W.D.La. 1984), aff'd, 778 F.2d 788 (5th Cir. 1985)(quoting Dailey v. Byrnes, 605 F.2d 858, 861 (5th Cir. 1979)[1]).

**IV**.

Based upon a review of the record before the Court, the following facts are not in dispute. On May 10, 2003, Plaintiff was incarcerated at Charlotte Correctional Institution and was housed in B dormitory in close management confinement. At approximately 10:49 p.m., Plaintiff was subjected to the nonspontaneous use of chemical agents while he was confined alone in his cell. Shortly after the administration of chemical agents, Plaintiff was permitted to shower[2], given a clean change of

---

[1]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[2]The record is unclear as to whether Plaintiff did in fact shower. According to the "Incident Report" dated May 10, 2003 prepared by Defendant Sullivan Plaintiff "refused a shower." Sullivan Aff. A-6. The "Emergency Room Record" completed by Nurse
(continued...)

clothing, returned to a different uncontaminated cell[3], and given a post-use of force medial examination by medical personnel. Plaintiff complained of shortness of breath, but was found not to be in any respiratory distress.

The facts that are in dispute concern the circumstances surrounding the reason for and amount of the application of the chemical agents. Defendants contend that at approximately 8:00 p.m., Plaintiff, along with other inmates, began yelling loudly in the wing. Sullivan Aff. p. 2. Originally, when told to by staff to quiet down, Plaintiff, along with the other inmates, shouted profanities back at the staff causing a disturbance in B dorm. Id. After being counseled by Defendant Sullivan[4], Plaintiff and the other inmates stopped their earlier disruptive behavior. Id. Later that same evening, at approximately 10:20 p.m., Plaintiff again engaged in disruptive behavior by yelling obscenities at staff. During this later event, all attempts by Sullivan to counsel Plaintiff were unsuccessful. Id. Sullivan then contacted

---

[2](...continued)
Taylor during the Inmate/Post-Use-of-Force Exam" dated May 10, 2003 indicates that Plaintiff "refused" to shower. Taylor Aff.-D.3. In contrast, the "Report of Person Using Force" dated May 10, 2003 prepared by M. Pate states that Plaintiff "was showered." Pate Aff. C-4. Plaintiff admits that he "was given a shower." Plaintiff's Decl. ¶4.

[3]There is a discrepancy as to which cell Plaintiff was returned.

[4]At the time of the incident, Sullivan was the B Dormitory Housing Sergeant. Sullivan Aff. Exh. A-1.

Pfalzgraf[5] who also attempted to counsel Gunn to no avail. Id. Pfalzgraf, after reviewing Plaintiff's DC4-650B entitled "Risk Assessment for the use of Chemical Restraint Agents and Electronic Immobilization Devices and Electronic Immobilization Devices" which indicated that Plaintiff "has no known medical conditions that would be exacerbated by the use of chemical agents,"[6] then contacted Timothy Cannon, the duty warden, to request authorization to use chemical agents on Plaintiff. Pfalzgraf Aff. Exh. B-1. Mr. Cannon authorized the use of chemical agents. Id. at B-2. Defendant Pfalzgraf returned to Plaintiff's cell with George Pate, who is certified to use chemical agents, and gave Plaintiff a final order to desist his disruptive behavior. Id.; see also Pate Aff. Exh. C-2.  After Plaintiff refused to comply, Pfalzgraf ordered Pate to administer 3 one second bursts of chemical agents into Plaintiff's cell. Id. Pate complied striking Plaintiff's torso with the chemical agents. Id. Plaintiff then ceased all disorderly conduct. Id.

Plaintiff presents a different version of these facts. Plaintiff contends that around 8:00 p.m. numerous inmates were

---

[5]At the of the incident Defendant Pfalzgraf held the position as Lieutenant, Assistant Third Shift Supervisor. Pfalzgraf Aff. Exh. B-1.

[6]A copy of the Plaintiff's Form DC4-650B is attached to the Affidavit of Pfalzgraf at Exh. B-4.  The form, dated August 19, 2002, was completed during Plaintiff's preconfinement health appraisal and kept in Plaintiff's dormitory file. Pfalzgraf Aff. Exh. B-2.

yelling in the B dormitory[7]. Porter Decl. p.1. Plaintiff admits Defendant Sullivan became upset since he could not tell which inmates were yelling, so he randomly chose certain inmates to write up for a disciplinary report. Id. Inmate Porter and Plaintiff were two of the inmates selected and "protested the arbitrary selection." Sullivan told Plaintiff and Porter that "they would be dealt with later." Id. At 10:49 p.m., Defendant Pfalzgraf knocked on Plaintiff's and Porter's doors while they were preparing for bed to tell them "he would be back." Id. see also Gunn Decl. ¶2. Defendant Pfalzgraf returned accompanied by Defendants Sullivan and Millard and ordered Millard to administer chemical agents on Plaintiff. Porter Decl. p.1. Millard complied and emptied a 9 ounce can of chemical spray into Plaintiff's cell directly onto Plaintiff. Id. At no time was Plaintiff disorderly. Glenn Decl., ¶2. In fact, at the time Plaintiff was sprayed, the "quad was quiet and peaceful." Id., ¶3. Although the Department's policy requires that all use of force situations be videotaped in their entirety, Defendants failed to videotape the incident. Id., ¶4.

Consequently, the Court must determine whether these contested facts present a sufficient disagreement to warrant submission to a jury, or whether the evidence is so one-sided that one party must prevail as matter of law. Hickson Corp. 357 F.3d at 1260 citing

---

[7] According to a grievance form dated May 20, 2003 submitted by inmate Porter to the Warden concerning the incident, "numerous inmates" were verbally protesting Defendant Sullivan's "strict silence rule." Plaintiff's Supplemental Response (Doc. #38).

<u>Anderson v. Liberty Lobby</u> 477 U.S. 242, 252 (1986).  The Court finds that a jury could find that Plaintiff was subjected to an unreasonable and excessive use of force designed to harm Plaintiff.  Thus, Plaintiff has presented sufficient evidence to support his claim and raise a genuine issue of material fact as to whether there was a need for the application of chemical agents and whether the amount of chemicals used was reasonable.  Further, based on pre-existing law, this Court concludes that Defendants had a fair and clear warning that their <u>alleged</u> conduct was unlawful.  <u>See Hope v. Pelzer</u>, 536 U.S. 730, 731 (2002); <u>Ort v. White</u>, 813 F.2d 318, 324.  For these reasons, given Plaintiff's version of the events, Defendants are not entitled to qualified immunity

Accordingly, it is hereby

**ORDERED:**

Defendants' Motion for Summary Judgment (Doc. #34) is **DENIED**.

**DONE AND ORDERED** in Fort Myers, Florida, on this   8th    day of January, 2007.

_____
JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record